UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AT LAST SPORTSWEAR, INC.,

       *Plaintiff*,

       -against-

MICHAEL KAMENS,

       *Defendant*,
-------------------------------------------------------------------X
MICHAEL KAMENS,

       *Third-Party Plaintiff*,

       -against-

AT LAST SPORTSWEAR, INC.,
BONNI DUCHON,
SUNIL AHUJA, and
SANJAY ISRANI,

       *Third-Party Defendants*.
-------------------------------------------------------------------X

13 CV 2355 (WHP)

**ANSWER,
COUNTERCLAIMS AND
THIRD-PARTY
COMPLAINT**

Michael Kamens, by his attorneys, The Harman Firm, PC, submits this Answer with Counterclaims to Plaintiff At Last Sportswear, Inc. (hereinafter "At Last"), and Third-Party Complaint against Third-Party Defendants Bonni Duchon, Sunil Ahuja, and Sanjay Israni.

Mr. Kamens responds to At Last's Complaint as follows:

1.     Mr. Kamens admits the allegations in ¶ 1 of the Complaint.

2.     Mr. Kamens admits the allegations in ¶ 2 of the Complaint.

3.     Mr. Kamens denies the allegations in ¶ 3 of the Complaint and asserts that the proper jurisdiction is the United States District Court for the Southern District of New York.

4. Mr. Kamens admits the allegations in ¶ 4 of the Complaint but denies that the agreement was ever valid as Defendant was fraudulently induced to enter into the agreement.

5. Mr. Kamens admits the allegations in ¶ 5 of the Complaint to the extent that the Complaint quotes the agreement.

6. Mr. Kamens admits the allegations in ¶ 6 of the Complaint.

7. Mr. Kamens denies the allegations in ¶ 7 of the Complaint.

8. Mr. Kamens denies the allegations in ¶ 8 of the Complaint.

9. Mr. Kamens lacks information to either admit or deny the allegations in ¶ 9 of the Complaint.

10. Mr. Kamens denies the allegations in ¶ 10(a) of the Complaint.

11. Mr. Kamens denies the allegations in ¶ 10(b) of the Complaint.

12. Mr. Kamens denies the allegations in ¶ 10(c) of the Complaint.

13. Mr. Kamens denies the allegations in ¶ 10(d) of the Complaint.

14. Mr. Kamens denies the allegations in ¶ 10(e) of the Complaint.

15. Mr. Kamens denies the allegations in ¶ 10(f) of the Complaint.

16. Mr. Kamens denies the allegations in ¶ 10(g) of the Complaint.

17. Mr. Kamens denies the allegations in ¶ 11 of the Complaint.

18. Mr. Kamens denies the allegations in ¶ 12 of the Complaint.

19. Mr. Kamens admits the allegations in ¶ 13 of the Complaint.

20. Mr. Kamens denies the allegations in ¶ 14 of the Complaint.

21. Mr. Kamens denies the allegations in ¶ 15 of the Complaint.

22. Mr. Kamens denies the allegations in ¶ 16 of the Complaint.

23. Mr. Kamens denies the allegations in ¶ 17 of the Complaint.

**FIRST AFFIRMATIVE DEFENSE**

24. At Last's Complaint fails to state a claim upon which relief could be granted.

**SECOND AFFIRMATIVE DEFENSE**

25. At Last's Complaint is barred by statutes of limitations.

**THIRD AFFIRMATIVE DEFENSE**

26. At Last's Complaint is barred by unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**

27. At Last's Complaint is barred by estoppel.

**FIFTH AFFIRMATIVE DEFENSE**

28. At Last's Complaint is barred by failure to state a cause of action.

**SIXTH AFFIRMATIVE DEFENSE**

29. At Last's Complaint is barred by laches.

**SEVENTH AFFIRMATIVE DEFENSE**

30. At Last's Complaint is barred by release and waiver.

**EIGHTH AFFIRMATIVE DEFENSE**

31. At Last's Complaint is barred by failure to properly serve Defendant.

**COUNTERCLAIMS AGAINST AT LAST AND THIRD-PARTY COMPLAINT ALLEGATIONS AGAINST BONNI DUCHON, SUNIL AHUJA, AND SANJAY ISRANI**

32. At Last breached the Key Employment Agreement (hereinafter, "Agreement") that it entered into with Mr. Kamens by eliminating his position of President of Sales or President (Sales).[1]

33. At Last also engaged in fraud and breached the Agreement in numerous other material respects.

---

[1] The Agreement refers to the job title using both styles interchangeably.

34. At Last and Mr. Ahuja fraudulently induced Mr. Kamens to enter into the Agreement by representing that At Last's sales figures were extraordinarily higher than they really were.

35. Prior to the signing of the Agreement, Mr. Ahuja and Mr. Israni courted Mr. Kamens aggressively and doggedly for years due to the fact that Mr. Kamens's reputation in the industry was so strong.

36. Mr. Ahuja and Mr. Israni repeatedly took Mr. Kamens out to lunch at Arno, an upscale Midtown restaurant.

37. Upon information and belief, Mr. Ahuja and Mr. Israni were impressed by Mr. Kamens's experience and business acumen as an apparel-industry executive; they expressed their belief that Mr. Kamens was the ideal choice to provide strong leadership at At Last.

38. Through these extensive preliminary communications, an agreement was reached and certain material aspects of it were reduced to writing in the Agreement: Mr. Kamens was to become President of Sales, in charge of all operations for At Last; he was hired to run the company.

39. During the negotiation process, At Last and Mr. Ahuja fraudulently induced Mr. Kamens to sign the Agreement, including lying about the amount of money that Mr. Kamens was to receive, which was grossly and deceptively exaggerated.

40. For example, the Agreement guarantees Mr. Kamens fifty-five one hundredths of one percent (0.55%) commission on factory-direct sales to Wal-Mart.

41. At Last deliberately deceived Mr. Kamens into believing that these sales to Wal-Mart would amount to thirty to thirty-five million dollars ($30–35,000,000) *per annum*.

42. However, At Last's factory-direct sales to Wal-Mart were in fact entirely nonexistent, effectively robbing Mr. Kamens of between one hundred sixty-five thousand to one hundred ninety-two thousand five hundred dollars ($165,000–$192,500).  This is fraud.

43. Mr. Kamens signed the final version of the Agreement on August 6, 2012.

44. An aspect of the Agreement was unusual: a hand-scrawled note on the last page, which Mr. Ahuja instructed Mr. Kamens to initial.

45. The scrawling instructed Mr. Kamens to not talk to anyone about the Agreement until his first day of work.

46. In practice, the *ad hoc* addendum was a prohibition on speaking to anyone about <u>any</u> aspect of At Last—which, Mr. Kamens later realized, was a tactic specifically designed to prevent him from learning of the firm's actual poor financial condition and state of disarray.

47. Mr. Kamens had a primary reservation and concern prior to signing: At Last's continued employment of Ms. Duchon.

48. This reservation and concern was due to the fact that Mr. Kamens was replacing Ms. Duchon's former extramarital paramour.

49. Prior to executing the Agreement, Mr. Ahuja promised Mr. Kamens that if Ms. Duchon became a problem, Mr. Kamens, as President and as her supervisor, would have the power to terminate her.

50. On December 4, 2012, Mr. Kamens's first day as President, Ms. Duchon began a campaign to destroy his employment and business relationships.

51. Ms. Duchon verbally harassed, badgered, and belittled Mr. Kamens.  This behavior was repeated every workday, until later when she refused to speak with Mr. Kamens altogether, even though as President of Sales, he was her supervisor.

52. In addition to preventing Mr. Kamens from addressing Ms. Duchon's extreme and outrageous conduct, Mr. Ahuja prohibited Mr. Kamens from firing her.

53. In addition, Ms. Duchon was granted <u>greater</u> responsibility including duties that in fact belonged to Mr. Kamens. This all resulted in, as both a practical and contractual matter, the elimination of Mr. Kamens's position as President of Sales.

54. The Agreement was breached in numerous other material respects, starting from the very beginning of his employment. In his first month as President of Sales, Mr. Kamens was stripped of his responsibility for all production orders, and forced to concentrate only on sales.

55. Mr. Kamens's efforts to improve employees' efficiency and punctuality were at first supported by Mr. Ahuja.

56. However, when it became necessary for Mr. Kamens to discipline employees, Mr. Ahuja prevented Mr. Kamens from taking actions necessary to perform his job functions.

57. Nonetheless, Mr. Kamens's quality of work was exceptional, drawing effusive praise from his employees.

58. However, Mr. Kamens continued to suffer Ms. Duchon's constant harassment. Mr. Kamens frequently voiced his dissatisfaction with the situation to Mr. Ahuja.

59. On February 7, 2013, Mr. Kamens emailed Mr. Ahuja, writing, *inter alia*, "[Ms. Duchon's] harassment prevents me from doing my job effectively."

60. Mr. Ahuja wrote back that he would "take care of this issue."

61. Instead, Mr. Ahuja bizarrely and outrageously proposed <u>increasing</u> Ms. Duchon's area of responsibility to encroach on that of Mr. Kamens: Mr. Ahuja asked Mr. Kamens to give up his control over all aspects of "wovens" to Ms. Duchon, which accounted for approximately sixty-six percent (66%) of the firm's business.

62. Since Mr. Ahuja had breached Mr. Kamens's contract by taking away nearly all of his job responsibilities as President of Sales, it became clear that his job had been eliminated.

63. Many other At Last employees were also aware of this fact.

64. At Last employees who directly expressed their sympathy and support to Mr. Kamens included:

    a. Jamil Ahmed;

    b. Shiv Sharma;

    c. Rado Novacov;

    d. Megan Rywelski;

    e. David Orland; and

    f. Erlyn Ikeda.

65. As a representative example, Mr. Sharma told Mr. Kamens, "I realize they're trying to push you out; it's sad, because you're one of the best at what you do."

66. Employees subordinate to Mr. Kamens knew more about the circumstances of his employment than Mr. Kamens himself.

67. The breaches of Mr. Kamens's contract were not limited to the elimination of his primary work responsibilities.

68. The Agreement granted Mr. Kamens "a minimum guaranteed commission of [f]ifty thousand . . . dollars [($50,000)] per year and same shall be paid in monthly installments of [four thousand one hundred sixty-six dollars and sixty-seven cents] $4,166.67 at the end of every month." Mr. Kamens never received any such payment.

69. These amounts are nominal in comparison with the damages that arose out of the other breaches.

70. Mr. Kamens's contract assured him two (2) full years of employment, of which he served merely three (3) months.

71. At a salary of three hundred thousand dollars ($300,000) with a minimum of fifty thousand dollars ($50,000) annual commission, the material breaches will result in damages of over six hundred thousand dollars ($600,000) in base pay alone.

72. The Agreement states that "[e]xecutive shall be entitled to share [t]hree . . . percent [(3%)] of the . . . [n]et [o]perating profit . . . of the Company." That profit-sharing arrangement, in addition to a commission of up to one and one-quarter percent (1.25%) on showroom sales and a half a percent (0.5%) commission on inventory sales, combined with Mr. Kamens's base pay, constitutes lost wages well over one million dollars ($1,000,000).

73. In addition to the material breaches and fraud outlined above, Mr. Kamens has also been subjected to tortious interference with his right to conduct business. The apparel industry is insular. Mr. Kamens's reputation has been seriously and irreversibly damaged by, *inter alia*, At Last's chicanery and amateurism.

74. Mr. Kamens came to At Last after more than two (2) decades of meteoric success in his industry. At Last's deleterious effect on his reputation and on the arc of his continued career has denied him incalculable future earnings.

75. Mr. Kamens's tenure with At Last also cost him physically. His sleep and digestion have undergone dire deterioration.

76. Mr. Kamens has made numerous doctor visits in order to address the effects of the undue stress induced by the constant harassment at work.

## COUNTERCLAIMS AGAINST AT LAST

### FIRST COUNTERCLAIM
### Fraudulent Misrepresentation against At Last

77. Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

78. At Last made material misrepresentations to Mr. Kamens, whom it intended to defraud.

79. Mr. Kamens reasonably relied on what he believed to be At Last's good-faith representations.

80. Mr. Kamens was shown purported profits of At Last, including those regarding Wal-Mart, which were patent lies.

81. Mr. Kamens's bonus was to be based on sales. The sales that Mr. Kamens was told he could expect were based on lies.

82. At Last's material misrepresentations caused damage to Kamens.

### SECOND COUNTERCLAIM
### Breach of Contract against At Last

83. Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

84. The Agreement set out a contract between Mr. Kamens and At Last.

85. To the extent that the contract is not void *ab initio*, it was breached by, *inter alia*, At Last's elimination of Mr. Kamens's position and At Last's failure to pay Mr. Kamens substantial owed compensation. The latter produced damages in excess of one million dollars ($1,000,000).

**THIRD-PARTY COMPLAINT CLAIMS**

**FIRST CLAIM OF THE THIRD-PARTY COMPLAINT**
**Fraudulent Misrepresentation against Sunil Ahuja and Sanjay Israni**

86. Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

87. Mr. Ahuja and Mr. Israni made material misrepresentations to Mr. Kamens, whom they intended to defraud.

88. Mr. Kamens reasonably relied on what he believed to be Mr. Ahuja's and Mr. Israni's good-faith representations.

89. Mr. Ahuja showed Mr. Kamens the purported profits of At Last's, including those regarding Wal-Mart, which were patent lies.

90. Mr. Israni represented to Mr. Kamens the purported profits of At Last's, including those regarding Wal-Mart, which were patent lies.

91. Mr. Kamens's bonus was to be based on sales. The sales that Mr. Kamens was told he could expect were based on lies.

92. Mr. Ahuja's and Mr. Israni's material misrepresentations caused damage to Kamens.

**SECOND CLAIM OF THE THIRD-PARTY COMPLAINT**
**Tortious Interference with Contract against Bonni Duchon**

93. Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

94. Ms. Duchon made it impossible for Mr. Kamens to do his job, thereby interfering with his contract as it was memorialized in the Agreement.

95. Mr. Israni and At Last were fully aware of Mr. Kamens's contract, which they created.

96. That contract placed Mr. Kamens in a supervisory role above Ms. Duchon.

97. This arrangement was repeatedly reiterated verbally and in writing by Mr. Ahuja.

98. Nonetheless, At Last and Mr. Israni encouraged Ms. Duchon to encroach upon Mr. Kamens's business and allowed her to terrorize him during work hours.

### THIRD CLAIM OF THE THIRD-PARTY COMPLAINT
### Tortious Interference with Prospective Economic Advantage and Tortious Interference with Business Relations against Bonni Duchon and Sanjay Israni

99. Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

100. Mr. Kamens's future earning prospects and reputation were irreparably damaged by Ms. Duchon's harassment, which Mr. Israni made possible.

101. Mr. Israni engaged in a campaign to prevent Mr. Kamens from performing his job completely.

### FOURTH CLAIM OF THE THIRD-PARTY COMPLAINT
### *Prima Facie* Tort against Bonni Duchon

102. Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

103. To the extent that Ms. Duchon did not interfere with the contract, she is responsible as a *prima facie* tort.

104. Mr. Kamens is now not earning money that he otherwise would have, had it not been for Ms. Duchon's behavior, which as described *supra*, was clearly done with malice.

105. As detailed in ¶¶ 70–71, material breaches, without even phantom bonus money, results in damages of over six hundred thousand dollars ($600,000).

106. The results of Ms. Duchon's behavior are multifarious and not only helped to cause Mr. Kamens's unemployment but also affirmatively prevent his finding reemployment elsewhere.

**WHEREFORE,** Michael Kamens respectfully requests that the Court grant the following relief, including that:

(i) The Complaint be dismissed in its entirety;

(ii) Mr. Kamens be awarded:

(a) Costs;

(b) Expenses;

(c) Disbursements;

(d) Punitive damages; and

(e) Reasonable attorneys' fees incurred in connection with this action; and

(iii) On the First Counterclaim against At Last, actual damages to be determined at trial, but in no event less than five hundred thousand dollars ($500,000);

(iv) On the Second Counterclaim against At Last, actual damages to be determined at trial, but in no event less than one million dollars ($500,000);

(v) On the First Claim of the Third-Party Complaint which is against Sunil Ahuja and Sanjay Israni, actual damages to be determined at trial, but in no event less than fifteen million dollars ($15,000,000);

(vi)     On the Second Claim of the Third-Party Complaint which is against Bonni Duchon, actual damages to be determined at trial, but in no event less than one million five hundred thousand dollars ($1,500,000);

(vii)    On the Third Claim of the Third-Party Complaint which is against Bonni Duchon and Sanjay Israni, actual damages to be determined at trial, but in no event less than one million five hundred thousand dollars ($1,500,000);

(viii)   On the Fourth Claim of the Third-Party Complaint which is against Bonni Duchon, actual damages to be determined at trial, but in no event less than fifteen million dollars ($15,000,000);

(ix)     Such other and further relief as this Court may deem just and proper.


Dated: New York, New York        Submitted by:
       May 24, 2013              THE HARMAN FIRM, PC
                                 *Counsel for Michael Kamens*



                                 _____s/_____
                                 Walker G. Harman, Jr. [WH-8044]
                                 Peter J. Andrews [PA-3295]
                                 200 West 57th Street, Suite 900
                                 New York, New York 10019
                                 (212) 425-2600
                                 wharman@theharmanfirm.com
                                 pandrews@theharmanfirm.com