**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
AT LAST SPORTSWEAR, INC.,

                *Plaintiff,*

         -against-

MICHAEL KAMENS,

                *Defendant,*
-------------------------------------------------------------------X
MICHAEL KAMENS,

              *Third-Party Plaintiff,*

         -against-

AT LAST SPORTSWEAR, INC.,
BONNI DUCHON,
SUNIL AHUJA, and
SANJAY ISRANI,

             *Third-Party Defendants.*
-------------------------------------------------------------------X

**13 CV 2355 (WHP)**

**ANSWER,**
**COUNTERCLAIMS AND**
**THIRD-PARTY**
**COMPLAINT**

     Michael Kamens, by his attorneys, The Harman Firm, PC, submits this Answer with Counterclaims to Plaintiff At Last Sportswear, Inc. (hereinafter "At Last"), and Third-Party Complaint against Third-Party Defendants Bonni Duchon, Sunil Ahuja, and Sanjay Israni.

     Mr. Kamens responds to At Last's Complaint as follows:

     1.      Mr. Kamens admits the allegations in ¶ 1 of the Complaint.

     2.      Mr. Kamens admits the allegations in ¶ 2 of the Complaint.

     3.      Mr. Kamens denies the allegations in ¶ 3 of the Complaint and asserts that the proper jurisdiction is the United States District Court for the Southern District of New York.

4.    Mr. Kamens admits the allegations in ¶ 4 of the Complaint but denies that the agreement was ever valid as Defendant was fraudulently induced to enter into the agreement.

5.    Mr. Kamens admits the allegations in ¶ 5 of the Complaint to the extent that the Complaint quotes the agreement.

6.    Mr. Kamens admits the allegations in ¶ 6 of the Complaint.

7.    Mr. Kamens denies the allegations in ¶ 7 of the Complaint.

8.    Mr. Kamens denies the allegations in ¶ 8 of the Complaint.

9.    Mr. Kamens lacks information to either admit or deny the allegations in ¶ 9 of the Complaint.

10.    Mr. Kamens denies the allegations in ¶ 10(a) of the Complaint.

11.    Mr. Kamens denies the allegations in ¶ 10(b) of the Complaint.

12.    Mr. Kamens denies the allegations in ¶ 10(c) of the Complaint.

13.    Mr. Kamens denies the allegations in ¶ 10(d) of the Complaint.

14.    Mr. Kamens denies the allegations in ¶ 10(e) of the Complaint.

15.    Mr. Kamens denies the allegations in ¶ 10(f) of the Complaint.

16.    Mr. Kamens denies the allegations in ¶ 10(g) of the Complaint.

17.    Mr. Kamens denies the allegations in ¶ 11 of the Complaint.

18.    Mr. Kamens denies the allegations in ¶ 12 of the Complaint.

19.    Mr. Kamens admits the allegations in ¶ 13 of the Complaint.

20.    Mr. Kamens denies the allegations in ¶ 14 of the Complaint.

21.    Mr. Kamens denies the allegations in ¶ 15 of the Complaint.

22.    Mr. Kamens denies the allegations in ¶ 16 of the Complaint.

23.    Mr. Kamens denies the allegations in ¶ 17 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

24.    At Last's Complaint fails to state a claim upon which relief could be granted.

### SECOND AFFIRMATIVE DEFENSE

25.    At Last's Complaint is barred by statutes of limitations.

### THIRD AFFIRMATIVE DEFENSE

26.    At Last's Complaint is barred by unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

27.    At Last's Complaint is barred by estoppel.

### FIFTH AFFIRMATIVE DEFENSE

28.    At Last's Complaint is barred by failure to state a cause of action.

### SIXTH AFFIRMATIVE DEFENSE

29.    At Last's Complaint is barred by laches.

### SEVENTH AFFIRMATIVE DEFENSE

30.    At Last's Complaint is barred by release and waiver.

### EIGHTH AFFIRMATIVE DEFENSE

31.    At Last's Complaint is barred by failure to properly serve Defendant.

### COUNTERCLAIMS AGAINST AT LAST AND THIRD-PARTY COMPLAINT ALLEGATIONS AGAINST BONNI DUCHON, SUNIL AHUJA, AND SANJAY ISRANI

32.    At Last breached the Key Employment Agreement (hereinafter, "Agreement") that it entered into with Mr. Kamens by eliminating his position of President of Sales or President (Sales).[1]

33.    At Last also engaged in fraud and breached the Agreement in numerous other material respects.

---

[1] The Agreement refers to the job title using both styles interchangeably.

34.    At Last and Mr. Ahuja fraudulently induced Mr. Kamens to enter into the Agreement by representing that At Last's sales figures were extraordinarily higher than they really were.

35.    Prior to the signing of the Agreement, Mr. Ahuja and Mr. Israni courted Mr. Kamens aggressively and doggedly for years due to the fact that Mr. Kamens's reputation in the industry was so strong.

36.    Mr. Ahuja and Mr. Israni repeatedly took Mr. Kamens out to lunch at Arno, an upscale Midtown restaurant.

37.    Upon information and belief, Mr. Ahuja and Mr. Israni were impressed by Mr. Kamens's experience and business acumen as an apparel-industry executive; they expressed their belief that Mr. Kamens was the ideal choice to provide strong leadership at At Last.

38.    Through these extensive preliminary communications, an agreement was reached and certain material aspects of it were reduced to writing in the Agreement: Mr. Kamens was to become President of Sales, in charge of all operations for At Last; he was hired to run the company.

39.    During the negotiation process, At Last and Mr. Ahuja fraudulently induced Mr. Kamens to sign the Agreement, including lying about the amount of money that Mr. Kamens was to receive, which was grossly and deceptively exaggerated.

40.    For example, the Agreement guarantees Mr. Kamens fifty-five one hundredths of one percent (0.55%) commission on factory-direct sales to Wal-Mart.

41.    At Last deliberately deceived Mr. Kamens into believing that these sales to Wal-Mart would amount to thirty to thirty-five million dollars ($30–35,000,000) *per annum.*

4

42.     However, At Last's factory-direct sales to Wal-Mart were in fact entirely nonexistent, effectively robbing Mr. Kamens of between one hundred sixty-five thousand to one hundred ninety-two thousand five hundred dollars ($165,000–$192,500).  This is fraud.

43.     Mr. Kamens signed the final version of the Agreement on August 6, 2012.

44.     An aspect of the Agreement was unusual: a hand-scrawled note on the last page, which Mr. Ahuja instructed Mr. Kamens to initial.

45.     The scrawling instructed Mr. Kamens to not talk to anyone about the Agreement until his first day of work.

46.     In practice, the *ad hoc* addendum was a prohibition on speaking to anyone about any aspect of At Last—which, Mr. Kamens later realized, was a tactic specifically designed to prevent him from learning of the firm's actual poor financial condition and state of disarray.

47.     Mr. Kamens had a primary reservation and concern prior to signing: At Last's continued employment of Ms. Duchon.

48.     This reservation and concern was due to the fact that Mr. Kamens was replacing Ms. Duchon's former extramarital paramour.

49.     Prior to executing the Agreement, Mr. Ahuja promised Mr. Kamens that if Ms. Duchon became a problem, Mr. Kamens, as President and as her supervisor, would have the power to terminate her.

50.     On December 4, 2012, Mr. Kamens's first day as President, Ms. Duchon began a campaign to destroy his employment and business relationships.

51.     Ms. Duchon verbally harassed, badgered, and belittled Mr. Kamens.  This behavior was repeated every workday, until later when she refused to speak with Mr. Kamens altogether, even though as President of Sales, he was her supervisor.

52.     In addition to preventing Mr. Kamens from addressing Ms. Duchon's extreme and outrageous conduct, Mr. Ahuja prohibited Mr. Kamens from firing her.

53.     In addition, Ms. Duchon was granted greater responsibility including duties that in fact belonged to Mr. Kamens.  This all resulted in, as both a practical and contractual matter, the elimination of Mr. Kamens's position as President of Sales.

54.     The Agreement was breached in numerous other material respects, starting from the very beginning of his employment.  In his first month as President of Sales, Mr. Kamens was stripped of his responsibility for all production orders, and forced to concentrate only on sales.

55.     Mr. Kamens's efforts to improve employees' efficiency and punctuality were at first supported by Mr. Ahuja.

56.     However, when it became necessary for Mr. Kamens to discipline employees, Mr. Ahuja prevented Mr. Kamens from taking actions necessary to perform his job functions.

57.     Nonetheless, Mr. Kamens's quality of work was exceptional, drawing effusive praise from his employees.

58.     However, Mr. Kamens continued to suffer Ms. Duchon's constant harassment. Mr. Kamens frequently voiced his dissatisfaction with the situation to Mr. Ahuja.

59.     On February 7, 2013, Mr. Kamens emailed Mr. Ahuja, writing, *inter alia*, "[Ms. Duchon's] harassment prevents me from doing my job effectively."

60.     Mr. Ahuja wrote back that he would "take care of this issue."

61.     Instead, Mr. Ahuja bizarrely and outrageously proposed increasing Ms. Duchon's area of responsibility to encroach on that of Mr. Kamens: Mr. Ahuja asked Mr. Kamens to give up his control over all aspects of "wovens" to Ms. Duchon, which accounted for approximately sixty-six percent (66%) of the firm's business.

62.     Since Mr. Ahuja had breached Mr. Kamens's contract by taking away nearly all of his job responsibilities as President of Sales, it became clear that his job had been eliminated.

63.     Many other At Last employees were also aware of this fact.

64.     At Last employees who directly expressed their sympathy and support to Mr. Kamens included:

      a.   Jamil Ahmed;

      b.   Shiv Sharma;

      c.   Rado Novacov;

      d.   Megan Rywelski;

      e.   David Orland; and

      f.   Erlyn Ikeda.

65.     As a representative example, Mr. Sharma told Mr. Kamens, "I realize they're trying to push you out; it's sad, because you're one of the best at what you do."

66.     Employees subordinate to Mr. Kamens knew more about the circumstances of his employment than Mr. Kamens himself.

67.     The breaches of Mr. Kamens's contract were not limited to the elimination of his primary work responsibilities.

68.     The Agreement granted Mr. Kamens "a minimum guaranteed commission of [f]ifty thousand . . . dollars [($50,000)] per year and same shall be paid in monthly installments of [four thousand one hundred sixty-six dollars and sixty-seven cents] $4,166.67 at the end of every month." Mr. Kamens never received any such payment.

69.     These amounts are nominal in comparison with the damages that arose out of the other breaches.

7

70.    Mr. Kamens's contract assured him two (2) full years of employment, of which he served merely three (3) months.

71.    At a salary of three hundred thousand dollars ($300,000) with a minimum of fifty thousand dollars ($50,000) annual commission, the material breaches will result in damages of over six hundred thousand dollars ($600,000) in base pay alone.

72.    The Agreement states that "[e]xecutive shall be entitled to share [t]hree . . . percent [(3%)] of the . . . [n]et [o]perating profit . . . of the Company."  That profit-sharing arrangement, in addition to a commission of up to one and one-quarter percent (1.25%) on showroom sales and a half a percent (0.5%) commission on inventory sales, combined with Mr. Kamens's base pay, constitutes lost wages well over one million dollars ($1,000,000).

73.    In addition to the material breaches and fraud outlined above, Mr. Kamens has also been subjected to tortious interference with his right to conduct business.  The apparel industry is insular.  Mr. Kamens's reputation has been seriously and irreversibly damaged by, *inter alia*, At Last's chicanery and amateurism.

74.    Mr. Kamens came to At Last after more than two (2) decades of meteoric success in his industry.  At Last's deleterious effect on his reputation and on the arc of his continued career has denied him incalculable future earnings.

75.    Mr. Kamens's tenure with At Last also cost him physically.  His sleep and digestion have undergone dire deterioration.

76.    Mr. Kamens has made numerous doctor visits in order to address the effects of the undue stress induced by the constant harassment at work.

## COUNTERCLAIMS AGAINST AT LAST

### FIRST COUNTERCLAIM
### Fraudulent Misrepresentation against At Last

77.    Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

78.    At Last made material misrepresentations to Mr. Kamens, whom it intended to defraud.

79.    Mr. Kamens reasonably relied on what he believed to be At Last's good-faith representations.

80.    Mr. Kamens was shown purported profits of At Last, including those regarding Wal-Mart, which were patent lies.

81.    Mr. Kamens's bonus was to be based on sales.  The sales that Mr. Kamens was told he could expect were based on lies.

82.    At Last's material misrepresentations caused damage to Kamens.

### SECOND COUNTERCLAIM
### Breach of Contract against At Last

83.    Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

84.    The Agreement set out a contract between Mr. Kamens and At Last.

85.    To the extent that the contract is not void *ab initio*, it was breached by, *inter alia*, At Last's elimination of Mr. Kamens's position and At Last's failure to pay Mr. Kamens substantial owed compensation.  The latter produced damages in excess of one million dollars ($1,000,000).

9

## THIRD-PARTY COMPLAINT CLAIMS

### FIRST CLAIM OF THE THIRD-PARTY COMPLAINT
### Fraudulent Misrepresentation against Sunil Ahuja and Sanjay Israni

86.     Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

87.     Mr. Ahuja and Mr. Israni made material misrepresentations to Mr. Kamens, whom they intended to defraud.

88.     Mr. Kamens reasonably relied on what he believed to be Mr. Ahuja's and Mr. Israni's good-faith representations.

89.     Mr. Ahuja showed Mr. Kamens the purported profits of At Last's, including those regarding Wal-Mart, which were patent lies.

90.     Mr. Israni represented to Mr. Kamens the purported profits of At Last's, including those regarding Wal-Mart, which were patent lies.

91.     Mr. Kamens's bonus was to be based on sales.  The sales that Mr. Kamens was told he could expect were based on lies.

92.     Mr. Ahuja's and Mr. Israni's material misrepresentations caused damage to Kamens.

### SECOND CLAIM OF THE THIRD-PARTY COMPLAINT
### Tortious Interference with Contract against Bonni Duchon

93.     Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

94.     Ms. Duchon made it impossible for Mr. Kamens to do his job, thereby interfering with his contract as it was memorialized in the Agreement.

95.  Mr. Israni and At Last were fully aware of Mr. Kamens's contract, which they created.

96.  That contract placed Mr. Kamens in a supervisory role above Ms. Duchon.

97.  This arrangement was repeatedly reiterated verbally and in writing by Mr. Ahuja.

98.  Nonetheless, At Last and Mr. Israni encouraged Ms. Duchon to encroach upon Mr. Kamens's business and allowed her to terrorize him during work hours.

### THIRD CLAIM OF THE THIRD-PARTY COMPLAINT
#### Tortious Interference with Prospective Economic Advantage and Tortious Interference with Business Relations against Bonni Duchon and Sanjay Israni

99.  Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

100.  Mr. Kamens's future earning prospects and reputation were irreparably damaged by Ms. Duchon's harassment, which Mr. Israni made possible.

101.  Mr. Israni engaged in a campaign to prevent Mr. Kamens from performing his job completely.

### FOURTH CLAIM OF THE THIRD-PARTY COMPLAINT
#### *Prima Facie* Tort against Bonni Duchon

102.  Mr. Kamens hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

103.  To the extent that Ms. Duchon did not interfere with the contract, she is responsible as a *prima facie* tort.

104.  Mr. Kamens is now not earning money that he otherwise would have, had it not been for Ms. Duchon's behavior, which as described *supra*, was clearly done with malice.

11

105.   As detailed in ¶¶ 70–71, material breaches, without even phantom bonus money, results in damages of over six hundred thousand dollars ($600,000).

106.   The results of Ms. Duchon's behavior are multifarious and not only helped to cause Mr. Kamens's unemployment but also affirmatively prevent his finding reemployment elsewhere.

**WHEREFORE,** Michael Kamens respectfully requests that the Court grant the following relief, including that:

(i)     The Complaint be dismissed in its entirety;

(ii)    Mr. Kamens be awarded:

    (a) Costs;

    (b) Expenses;

    (c) Disbursements;

    (d) Punitive damages; and

    (e) Reasonable attorneys' fees incurred in connection with this action; and

(iii)   On the First Counterclaim against At Last, actual damages to be determined at trial, but in no event less than five hundred thousand dollars ($500,000);

(iv)    On the Second Counterclaim against At Last, actual damages to be determined at trial, but in no event less than one million dollars ($500,000);

(v)     On the First Claim of the Third-Party Complaint which is against Sunil Ahuja and Sanjay Israni, actual damages to be determined at trial, but in no event less than fifteen million dollars ($15,000,000);

(vi)    On the Second Claim of the Third-Party Complaint which is against Bonni Duchon, actual damages to be determined at trial, but in no event less than one million five hundred thousand dollars ($1,500,000);

(vii)    On the Third Claim of the Third-Party Complaint which is against Bonni Duchon and Sanjay Israni, actual damages to be determined at trial, but in no event less than one million five hundred thousand dollars ($1,500,000);

(viii)    On the Fourth Claim of the Third-Party Complaint which is against Bonni Duchon, actual damages to be determined at trial, but in no event less than fifteen million dollars ($15,000,000);

(ix)    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      May 24, 2013

Submitted by:
THE HARMAN FIRM, PC
*Counsel for Michael Kamens*

_____s/_____
Walker G. Harman, Jr. [WH-8044]
Peter J. Andrews [PA-3295]
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com
pandrews@theharmanfirm.com

13

FILED: NEW YORK COUNTY CLERK 04/09/2013                    INDEX NO. 153098/2013
NYSCEF DOC. NO. 6  Case 1:13-cv-02355-WHP   Document 1   Filed 04/09/13   Page 1 of 9  CEF: 04/09/2013

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

AT LAST SPORTSWEAR, INC.,

          *Plaintiff,*

-against-

MICHAEL KAMENS,

          *Defendant.*
------------------------------------------------------------X



**Index No.:** _____
              *(unassigned)*

**NOTICE OF REMOVAL**

      Michael Kamens, Defendant in the above-captioned matter, hereby files the within Notice of Removal of this action and states, in support of the Notice of Removal, that:

      1.     This action was commenced in the Supreme Court of the State of New York, County of New York, by the filing of a Complaint on April 4, 2013, which is entitled *At Last Sportswear, Inc. v. Michael Kamens*, 153098/2013.  A true and correct copy of the Complaint is annexed hereto as *Exhibit A*.

      2.     Defendant has not been served the Complaint.

      3.     This Notice of Removal is filed within thirty (30) days of notice of the initial pleading setting forth the claims for relief upon which this action is based.  In the event that Defendant is served the Complaint, thirty (30) days will be counted from the date of service of process.

      4.     No hearings or other proceedings have taken place in this action to Defendant's knowledge.

      5.     Plaintiff alleges that Defendant purportedly breached a contract and fiduciary duties.

1

6.      Defendant is a citizen and resident of the State of Pennsylvania, County of Bucks.

7.      At Last Sportswear, Inc. is a New York corporation, which maintains a principal place of business in New York City, county of New York.

8.      Plaintiff pleads damages of twenty-five million dollars ($25,000,000), including punitive damages, and additionally requests: (1) costs and disbursements; and (2) attorneys fees. As such, Plaintiff's alleged damages are such that the U.S. District Court has jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a), and their claims are therefore removable to the U.S. District Court under 28 U.S.C. §1441(a).

**WHEREFORE,** Defendant requests that the foregoing action be removed from the Supreme Court of the State of New York, New York County, to the United States District Court for the Southern District of New York.

Dated: New York, New York
       April 9, 2013

                                        By:    _Walker G. Harman_____
                                               Walker G. Harman, Jr. [WH-8044]
                                               THE HARMAN FIRM, PC
                                               *Attorneys for Defendants*
                                               200 West 57th Street, Suite 900
                                               New York, New York 10019
                                               (212) 425-2600
                                               wharman@theharmanfirm.com

2

# Exhibit A

FILED: NEW YORK COUNTY CLERK 04/04/2013

NYSCEF DOC. NO. 1

INDEX NO. 153098/2013

RECEIVED NYSCEF: 04/04/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------x

AT LAST SPORTSWEAR, INC.

                Plaintiff,

    - against -

MICHAEL KAMENS

                Defendant.

--------------------------------------------------------x

Index No.:

Plaintiff designates
New York County
As the place of trial.

**SUMMONS**

Basis of Venue:
Plaintiff's Principal
Place of Business

To the above-named Defendant:

      **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's attorney, at its address stated below, an answer to the attached Complaint.

      If this Summons was personally served upon you in the State of New York, the answer must be served within twenty (20) days after such service of the Summons, excluding the date of service. If the Summons was not personally delivered to you within the State of New York, the answer must be served within thirty (30) days after service of the Summons is complete as provided by law.

      If you do not serve an answer to the attached Complaint within the applicable time limitation stated above, a judgment may be entered against you, by default, for the relief demanded in the Complaint, without further notice to you.

      The action will be held in the Supreme Court of the State of New York in and for the County of New York. This action is brought in the County of New York because venue is fixed by written agreement.

DATED: New York, New York
        April 04, 2013

                ALONSO, ANDALKAR, SMALL, TORO & FACHER, P.C.
                Attorneys for Plaintiff
                920 Broadway, 16th Floor
                New York, New York 10010
                (212) 598-5900

Plaintiff's Address:          525 7th Avenue, Suite 1501, New York, NY 10018

Defendant's Address:         1950 Timber Lakes Dr., Yardley, PA 19067

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------x

AT LAST SPORTSWEAR, INC.                              Index No.

               Plaintiff,

     -against-                                    **COMPLAINT**

MICHAEL KAMENS,

               Defendant.
-------------------------------------------------------------x

     Plaintiff AT LAST SPORTSWEAR, INC. by its attorneys, Alonso, Andalkar,

Small, Toro & Facher, P.C. as and for its Complaint against Defendant Michael Kamens

alleges and sets forth as follows:

PARTIES

     1.     Plaintiff At Last Sportswear, Inc. ("At Last") is a domestic corporation

doing business in the City, County and State of New York.

     2.     Upon information and belief, Defendant Michael Kamens ("Kamens") is

an adult individual, residing at 1950 Timber Lakes Drive, Yardley, Pennsylvania 19067.

     3.     Jurisdiction over Kamens is properly exercised under CPLR 302(a)1 as the

contract at issue herein was negotiated, executed and performed by the parties in the City,

County and State of New York, and under the consent to jurisdiction provision contained

in the subject agreement.

AS AND FOR A FIRST CAUSE OF ACTION<br>FOR BREACH OF CONTRACT

     4.     On or about August 06, 2012, At Last and Kamens entered into an

agreement (the "Agreement) which provided for the employment of Kamens by At Last.

A copy of the Agreement is annexed hereto as Exhibit A.

     5.     The Agreement provided, in pertinent part, as follows:

Executive shall serve in an executive capacity and shall perform such duties as are customarily associated with his then current title and such additional duties reasonably assigned to the Executive by Sunil Ahuja, the CEO of the Company in each case as consistent with Executive's position. The CEO has the right to assign and change the Executive's duties at any time, subject to the Executive's rights under this Agreement in the event such assignment or change shall constitute Good Reason (as defined in Section 8 below). Following is a brief description (including but not limited to) of the executive's duties:

(a)  Executive shall be the President of Sales for the Company with respect to At Last Products, and as such shall be in charge of showroom sales of At Last Products and shall train and supervise sales staff hired by the Company.

(b)  In the capacity of President (Sales) and Head of the Showroom, Executive shall have complete and independent responsibility for Sales, Designs, Showroom management & administration functions.

(c)  Executive shall supervise and provide guidance to the Design & Merchandising Department of the Company. Executive shall also coordinate with the Production and Sourcing departments of the Company.

(d)  Executive shall be responsible for preparing detailed sales forecasts for Company's breaking down projected sales by customer, account and sales person. Executive acknowledges and agrees that such projected sales figures shall be relied upon by the Company in order to enable it to acquire the proper amount and type of fabric and to properly insure production of At Last Products. Should company disapprove such sales projections, Executive shall use his best efforts to make acceptable modifications.

(e)  Executive shall, subject the approval of the Company, assist in the advertising of At Last Products with all such advertising to be done at the sole cost and expense of the Company.

(f)  Executive shall travel as reasonably required in the performance of such duties of the Company.

[Exhibit "A", Paragraph 1.3, pages 1-2.]

*       *       *

(a) The Company shall have the right to terminate Executive's employment with the Company at any time for Cause by giving notice as described in Section 8.4 of this Agreement.

2

(b) "Cause" for termination shall mean: . . . (b) Executive's breach of any material provision of this Agreement; (c) Executive's repeated refusal to abide by or comply with the reasonable directives of the Company and/or its CEO consistent with his duties; (d) Executive's willful dishonesty, fraud, or gross misconduct with respect to the business or affairs of the Company or of his duties hereunder; (e) Executive's intentional damage to any material or valuable property of the Company; (f) conduct by Executive which demonstrates gross unfitness to serve.

[Exhibit "A", Paragraph 8.1, page 8.]

\*      \*      \*

Termination of Executive's employment pursuant to this Agreement shall be effective on the earliest of: . . .

(b) Immediately upon the Company giving written notice to Executive of his termination for Cause.

[Exhibit "A", Paragraph 8.4(b), page 8.]

6.      On or about December 04, 2012, Kamens began rendering services to At Last as its President of Sales.

7.      On or about March 21, 2013, Kamens left At Last's employ without any provision of notice pursuant to the Agreement or otherwise.

8.      At all times relevant hereto, Plaintiff complied with all of its duties and obligations under the Agreement.

9.      On or about April 04, 2013, At Last issued a notice of termination to Kamens.

10.      Kamens breached the Agreement by, *inter alia,*:

(a)      abandoning his employment by At Last;

(b)      terminating such employment in violation of the express provisions of the Agreement, such as by effecting such termination without "Good Reason" as required by Paragraph 8.2 of the Agreement;

(c)      failing to provide At Last with notice of his intent to terminate his employment pursuant to Paragraph 10.1 of the Agreement;

3

(d)    failing or refusing to perform the duties required by his position as President of Sales;

(e)    refusing to abide by the directives of At Last's CEO and perform such tasks as were assigned to him in accordance with the Agreement; and

(f)    utilizing abusive language toward At Last's employees resulting in physical and emotional trauma to At Last's staff and executives; and

(g)    engaging in conduct that demonstrated a gross unfitness to serve.

11.    As a direct and proximate result of Defendant's breach of the agreement, Plaintiff has suffered damages in excess of $5,000,000.00 in an exact amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR BREACH OF FIDUCIARY DUTY

12.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs numbered 1 through 11 of the Complaint with the same force and effect as though more fully set forth herein.

13.    Kamens was a fiduciary of At Last while acting in his capacity as President of Sales.

14.    Kamens's aforementioned actions constituted a breach of fiduciary duty.

15.    As a result of Defendant's breach of fiduciary duty, Plaintiff has suffered damages in excess of $5,000,000.00 in an amount to be determined at trial.

16.    The actions of Kamens were effected in bad faith, and were malicious, intentional, and intended solely with the intent to cause damage to At Last.

17.    Based upon the intentional, malicious and deliberately harmful nature of the Kamens's actions, At Last is entitled to an award of punitive damages in excess of $15,000,000.00 in an amount to be determined at trial.

**WHEREFORE**, Plaintiff requests judgment against Defendant, as follows:

4

Case 1:13-cv-02355-WHP   Document 1   Filed 04/09/13   Page 9 of 9

(a)   On the First Cause of Action for breach of contract, compensatory damages in excess of $5,000,000.00 in an exact amount to be determined at trial;

(b)   On the Second Cause of Action for breach of fiduciary duty, compensatory damages in excess of $5,000,000.00 in an exact amount to be determined at trial, plus punitive damages in excess of $15,000,000.00 in an amount to be determined at trial;

(c)   An award of attorneys fees; together with

(d)   All costs and disbursements of this action.

Dated: New York, New York
April 04, 2013

ALONSO, ANDALKAR, SMALL
TORO & FACHER, P.C.

By: _____
        Mark J. Alonso
Attorneys for Plaintiff
920 Broadway, 16th Floor
New York, New York 10010
(212) 598-5900

5

September 15, 2011

## INDIVIDUAL PRACTICES OF JUDGE WILLIAM H. PAULEY III

Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
Room 2210
Courtroom 11D
New York, NY 10007
Website: http://www.nysd.uscourts.gov/

Unless otherwise ordered, matters before Judge Pauley shall be conducted in accord with the following practices:

I.   **Communications With Chambers**

   A.  **Letters.** Except as otherwise provided below, communications with Chambers shall be by letter, with copies simultaneously delivered to all counsel. Copies of correspondence between counsel shall not be sent to the Court.

   B.  **Telephone Calls.** Except as provided in Paragraph I (D) below, telephone calls to Chambers are permitted only in <u>emergency situations</u> requiring immediate attention. In such situations, call Chambers at (212) 805-6387. Counsel should not call Chambers with respect to procedural questions.

   C.  **Faxes.** Faxes to Chambers are not permitted without prior express permission.

   D.  **Docketing, Scheduling and Calendar Matters.** For docketing, scheduling and calendaring, call Deputy Clerk Wayne E. Gosnell, Jr., Esq. at (212) 805-6387 between 9:00 a.m. and 5:00 p.m.

   E.  **Requests for Adjournments or Extensions of Time.** All requests for adjournments or extensions of time must be in writing and state (1) the original date, (2) the reason(s) for the request, (3) the number of previous requests and whether they were granted, and (4) whether the adversary consents and, if not, the reasons why the adversary refuses to consent. For requests to extend discovery, additionally state what discovery has been conducted and what discovery is incomplete. If the requested adjournment or extension affects any other scheduled dates, a proposed Revised Scheduling Order must be attached. Any request for an adjournment must be received in Chambers not less than two business days before the scheduled time.

**F. Inquiries Concerning *Sub Judice* Motions.**  If a motion is not decided within 90 days of the date that it is fully submitted or argued, whichever is later, any party may bring this fact to the Courts attention by letter.

**G. General Information.**  For general information, please consult the website for the United States District Court for the Southern District of New York: http://www.nysd.uscourts.gov/.  Pro Se litigants should contact the Pro Se Office at (212) 805-0175.

## II.   Conferences

**A.  Principal Trial Counsel.**   The attorney who will serve as principal trial counsel must appear at all conferences with the Court.

**B. Initial Case Management Conference.**  The Court will schedule an Initial Pretrial Conference within three months of the filing of the Complaint.  A courtesy copy of the pleadings and a Fed. R. Civ. P. 26(f) report should be delivered to Chambers at least one week prior to the conference.

**C. Additional Conferences.**  Additional conferences may be scheduled from time to time as needed.

## III.   Motions

**A. Pre-Motion Conferences in Civil Cases.**

    i.  A pre-motion conference is required prior to the filing of any motion, except discovery motions; motions with a jurisdictional time limit as provided by the Federal Rules of Appellate Procedure; motions brought on by order to show cause; motions for reargument or reconsideration; motions by incarcerated pro se litigants; motions for admission pro hac vice; motions for attorneys' fees; motions for remand; and motions to appoint lead plaintiff and lead defense counsel in securities class actions.

    ii.  To request a pre-motion conference, the moving party must submit a letter, not exceeding three pages in length, setting forth the basis for the anticipated motion.  Opposition letters, no longer than three pages, must be submitted to the Court within five (5) business days of receipt of the movant's letter.  Thereafter, the Court will notify the parties of the conference date.

    iii.  Service of a pre-motion conference letter within the time period provided by Federal Rule of Civil Procedure 12(a) extends the time to answer or move to dismiss until further order of the Court.

iv. For discovery motions, follow Local Civil Rule 37.2. To raise a discovery dispute with the Court, counsel should describe the dispute in a single joint letter not exceeding six (6) pages. Strict adherence to the "meet and confer" rule (Fed. R. Civ. P. 37(a)(2)(A)) is required and should be described in the joint submission, identifying the time, place and duration and naming the counsel involved in the discussion. The joint letter shall describe concisely the issues in dispute and the respective positions of the parties, citing the applicable authority that the respective parties claim for support.

B. **Exhibits.** All exhibits should be tabbed and indexed, with plaintiffs identifying exhibits with numbers and defendants with letters.

C. **Memoranda of Law.** Unless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 pages, and reply memoranda are limited to 10 pages. Memoranda of 10 pages or more shall contain a table of contents and a table of cases. Counsel shall conform citations to The Bluebook citation system.

D. **Format.** Motion papers shall be double-spaced, and shall use 12-point font, including footnotes, and shall have one-inch margins on all sides. Footnotes are discouraged.

E. **Filing of Motion Papers.** Motion papers shall be filed promptly after service. The moving party is responsible for furnishing Chambers with a letter specifying each motion paper and memorandum filed by any party in connection with the motion. The moving party shall furnish this letter with its reply memorandum.

F. **Oral Argument on Motions.** The Court will notify counsel if oral argument is required. Oral argument ordinarily will be held on Friday.

IV. **Courtesy Copies**

A. **Requirement For All Submissions.** One courtesy copy of all pleadings, motions and all other filings, including stipulations and proposed orders, shall be clearly marked as a courtesy copy and submitted to Chambers at the time the originals are filed or as soon as practicable thereafter.

V. **Sealed Documents.**

A. **Requests For Sealing.** Parties must obtain leave of this Court before filing any document under seal. Any sealing request shall include a party's proposed redactions. If leave is granted, parties must file redacted copies with the Clerk of the Court. Proposed protective orders shall include a provision reflecting this

3

requirement.

## VI.  Pretrial Procedures

A.  **Joint Pretrial Orders in Civil Cases.**  Unless otherwise ordered by the Court, within 30 days of the completion of discovery in a civil case, the parties shall submit to the court for its approval a joint pretrial order, which shall include the following:

    i.  The full caption of the action.

    ii.  The names, addresses (including firm names), and telephone and fax numbers of trial counsel.

    iii.  A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction.  Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.

    iv.  A brief summary by each party of the claims and defenses that party has asserted which remain to be tried, without recital of evidentiary matters but including citations to all statutes relied on.  Such summaries shall identify all claims and defenses previously asserted which are not to be tried.

    v.  A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed.

    vi.  A statement as to whether or not all parties have consented to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).

    vii.  Any stipulations or agreed statements of fact or law that have been agreed to by all parties.

    viii.  A list by each party as to the witnesses whose testimony is to be offered in its case in chief, including expert witnesses, if any, and a statement indicating whether such witnesses will testify in person or by deposition. No witness not listed may be called at trial on either party's case-in-chief absent good cause shown.

    ix.  A designation by each party of deposition testimony to be offered in its case in chief, with any cross-designations and objections by any other party.

4

x.  A list by each party of exhibits to be offered in its case in chief and any objections by the adverse party.  In cases likely to involve substantial numbers of deposition exhibits, the parties are encouraged to agree at the outset of discovery to assign a unique exhibit number or letter to each exhibit marked at any deposition so that exhibit designations used in deposition transcripts may be used without change at trial.  Absent such a system, plaintiff's trial exhibits shall be identified by numbers and defendant's by letters.  No exhibit not listed may be used at trial except for cross-examination purposes or if good cause for its exclusion for the joint pretrial order is shown.  Any objection not set forth in the joint pretrial order will be considered waived absent good cause shown.

B.  **Filings Prior to Trial in Civil Cases.**  Unless otherwise ordered by the Court, each party shall file, 15 days before the date of commencement of trial if such a date has been fixed, or 30 days after the filing of the final pretrial order if no trial date has been fixed:

i.  In jury cases, any proposed voir dire questions, a joint request to charge and a verdict form.  The parties must submit a single, unified set of proposed jury instructions on the law applicable to the specific case; where an instruction is not agreed upon, the parties should indicate who is proposing the instruction and the legal basis for the instruction and for the other party's opposition to the instruction;

ii.  In nonjury cases, a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to establish each element;

iii.  In all cases, motions addressing any evidentiary or other issues which should be resolved in limine; and

iv.  In any case where such party believes it would be useful, a pretrial memorandum limited to 25 pages.

VII.  **Default Judgments**

A.  **Motions.**  Motions for default judgments will not be accepted absent the following:

i.  A pre-motion conference as required by 3.A.(i);

ii.  A description of the nature of the claim;

iii.  An affidavit representing that this Court has subject matter jurisdiction

5

over the action;

    iv.  An affidavit representing that this Court has personal jurisdiction over the defendant;

    v.  An affidavit representing that the defendant is not an infant or an incompetent;

    vi.  A certificate of default stating that the defendant was properly served and failed to answer/appear, signed and stamped by the Clerk of the Court. (If the defendant did appear in the action, the plaintiff must submit an affidavit representing that the defendant has notice of the application for default);

    vii.  An affidavit requesting reasonable attorneys' fees, if attorneys' fees are sought, along with the legal basis for any such award; and

    viii.  All appropriate substantiating documentation.

*(Generally, a copy of the complaint satisfies (ii), (iii), and (iv))*

B.  **Damages.**  If the plaintiff seeks an award of damages in the motion for default judgment, the plaintiff must also include:

    i.  A request for an amount equal to or less than the principal amount demanded in the Complaint;

    ii.  Definitive information and documentation such that the amount provided for in the proposed judgment can be calculated. (If this requirement cannot be satisfied, a default judgment may be granted as to liability, and damages will be determined by an inquest);

    iii.  An affidavit representing that no part of the judgment sought has been paid, other than as indicated in the motion;

    iv.  A request for interest on the principal amount not to exceed 9%, if interest is sought; and

    v.  The calculations made in arriving at the proposed judgment amount.



062S0008655552

$5.050
US POSTAGE
PRIORITY
COMBASPRICE
FROM 11201
JUN 14 2013
stamps .com



PERSONAL +
CONFIDENTIAL

SANJAY ISRANI
AT LAST SPORTSWEAR, INC.
525 7th Avenue, Suite 1501
New York NY 10018-4901

BARNONE
c/o WALKER G. HARMAN, JR.
200 West 57th Street
Suite 900
New York, NY 10019